IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 20-cv-60220-JIC

BRET JONES THEIS SR. and
TERESA THEIS, individually and as trustees
of the JONES-THEIS FAMILY TRUST dated
August 17, 2005, and PAOLO ARRIGO,

        Plaintiffs,

vs.

ERNEST VARITIMOS,
RACHEL VARITIMOS,
UPLAND ASSET MANAGEMENT LLC,

        Defendants.



FILED BY _____ D.C.

FEB 2 8 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES

Defendants answer and assert the following affirmative defenses to the Complaint filed by Plaintiffs:

## ANSWER

1. Lack Knowledge.

2. Lack Knowledge.

3. Admitted.

4. Denied.

5. Denied.

6. Denied.

7. Denied.

8. Denied.

9. Denied.

10. Denied.

11. Lack Knowledge.

12. Lack Knowledge.

13. Denied.

14. Denied.

15. Admitted.

16. Denied.

17. Denied.

18. Denied.

19. Denied.

20. Denied.

21. Admitted.

22. Denied.

23. Denied.

24. Denied.

25. Denied.

26. Denied.

27. Denied.

28. Denied.

29. Denied.

30. Lack Knowledge.

31. Denied.

32. Denied.

33. Denied.
34. Denied.
35. Denied.
36. Denied.
37. Denied.
38. Denied.
39. Denied.
40. Denied.
41. Denied.
42. Denied.
43. Denied.
44. Denied.
45. Denied.
46. Denied.
47. Denied.
48. Denied.
49. Denied.
50. Denied.
51. Denied.
52. Denied.
53. Denied.
54. Denied.
55. Denied.

56. Denied.

57. Denied.

58. Denied.

59. Denied.

Defendants demand judgment in their favor, costs, and all other relief deemed appropriate.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiffs' claims are barred because the things stated as factual information are not facts, they are all based on false premise that the Defendant solicited the plaintiff using emails. This is not the case. The defendant had personal relationships with all customers, including the Plaintiff, prior to the initiation of the private fund. In fact, the Defendant had a personal relationship with the Plaintiff for several years prior to the start of the fund, with almost daily communications through Skype, text messages and email. The Plaintiff knew in advance of the emails that the Defendant was trading accounts for other friends and wanted to be included. Also, almost all of the emails included as evidence had no relation to the private fund, they were for training classes or software, such as indicators and automated strategies. None of these products involved the Defendant personally trading people's accounts, so they have no relevance to this matter. All customers of the fund were personal friends of the Defendant prior to the start of the private fund. Emails that were sent out with regard to the private fund, were not sent to the general public, the emails were only sent to a small group of people where the Defendant had long standing personal relations.

## Second Affirmative Defense

Plaintiffs' claims are barred because the assertion that TradeStation advertisements that contained the Defendants name and picture (affiliate page) were related to the on-boarding procedure of the private fund is false. The TradeStation affiliate page referenced only making available discounts on commissions if the Plaintiff or any other person created an account using the link on this page. The Defendant received no compensation if the Plaintiff or any other person used the affiliate link to create a TradeStation account. The assertion that this was part of a process to sign up customers for the private fund is completely false, there was no connection. The claim that the Plaintiff started a relationship by visiting this affiliate page is completely false. The Plaintiff and Defendant had an ongoing relationship that started several years prior to that page being published. The Defendant simply pointed friends to this affiliate page as a courtesy so that they could obtain the discount on commissions. Anyone could use the link, it was not tied to products or services that the Defendant offered in any way.

## Third Affirmative Defense

Plaintiffs' claims are barred because Rachel Varitimos had no involvement with the handling of accounts, and Upland Asset Management LLC was never involved in the legal structure of the private fund and the LLC had no assets. It is true that the Defendant created the corporation with future plans to use the legal structure, and so used the name as an Operating As, so that was the only connection, other than that the LLC was never used for anything else, there were no bank accounts or checks made out to the LLC, there were no accounts opened under that LLC, there was never even an annual report created for the LLC. The LLC was simply a place holder for future plans that never materialized. Rachel Varitimos had no material involvement with the private fund, or the operation of the fund. She was simply a new college graduate that wanted to

look over her dad's shoulder to see how things worked. She assisted in the drafting of certain client communications, but she never received any compensation. Rachel currently lives with the Defendant and has no assets.

### Fourth Affirmative Defense

Plaintiffs' claims are barred because the claim that the Plaintiff was unaware of the risk is completely false and contrary to what actually happened. The plaintiff and the Defendant were in constant communications, almost every day that the Defendant was trading the Plaintiff's account. The communications are well documented in emails and chat logs. The Plaintiff and Defendant had lengthy conversations revolving around virtually all trades that included the strategy, possible outcomes and risk. All trades across all clients were synchronized and sized according to clients' capital account size, as prescribed by TradeStation managers. The Defendant took great care to size positions so as to minimize the risk of getting a margin call should there be a market event that might cause that to happen. However, after a few months of trading the Plaintiff's account, the Plaintiff instructed the Defendant that he was removing 2/3 of the account from the pool and to continue to apply the same position sizing on the remaining 1/3 as if the total amount was in the account, which reduced the account from $3 Million to approximately $1 Million. So, in other words, the Defendant was instructed to trade with risk parameters that were 300% outside the risk parameters used in every other account. The defendant told the Plaintiff that this was not acceptable, but the Plaintiff insisted because the Plaintiff wanted to trade Apple Options with that 2/3, or $2 Million. The Defendant instructed the Plaintiff that the only way this is possible is that the Plaintiff agree to move the 2/3 back into the account if there was a margin call. The Plaintiff agreed to that condition. That condition occurred, there was a margin call. The Defendant communicated to the Plaintiff by both phone

6

and email that the Plaintiff needed to replace the $2 Million, otherwise face liquidation, but the Plaintiff refused, and instead said he would not add any more money until the account was brought back, which was a breach of agreement, and not possible by any reasonable standard.

### Fifth Affirmative Defense

Plaintiffs' claims are barred because the court lacks personal jurisdiction. Neither Defendants, Ernest and Rachel, never did business in Florida, have no office in Florida and never lived in Florida.

### Sixth Affirmative Defense

Plaintiffs' claims are barred by the statute of limitations, as the statute is 2 years for professional malpractice.

### Seventh Affirmative Defense

Plaintiffs' claims are barred because the plaintiffs fail to state a claim upon which relief can be granted.

### Eighth Affirmative Defense

Plaintiffs' claims are barred because the court lacks subject matter jurisdiction.

### Ninth Affirmative Defense

Plaintiffs' claims are barred because the claim that the Defendant engaged in "cherry picking" winning trades for Defendants and others and allocating losing trades to the Plaintiff is a lie. The Defendants had no capital in the private fund, so they could not pick any sort of trade for themselves, additionally all other accounts were treated equally through programmatic means. Every trade was programmed to trade a specific number of positions for each account according to the account size based on a fixed schedule. Also, the claim that trades were not disclosed is

7

also a lie. Every trade was visible to the Plaintiff as they maintained a trading platform and had real time access to all trades. Additionally, the Plaintiff and Defendant were communicating about the trades, the strategy and the risks involved on almost a daily and continuous basis. Also, reports were generated at the end of each month that detailed the activity in the Plaintiff's account, that included balances, profit and loss, and a narrative describing what was done in the past period and what the strategy was going forward.

### Tenth Affirmative Defense

Plaintiffs' claims are barred because the characterization of the Defendant as a CTA is false. The Defendant was an Exempt Small Private Fund Adviser. The fund was under $10 million.

### Tenth Affirmative Defense

Plaintiffs' claims are barred because the assertion that the Defendant exaggerated inflated profit expectation is not true. The Plaintiff introduced his friend into our circle of messaging for the purpose of getting Arrigo involved with the fund, as the fund was profitable at that time. Also, there's could not be fraud as this would imply that the defendant would benefit by having access to the Plaintiffs' account, when in fact the Defendant had no ability to withdraw or access the funds directly, and worked on a commission basis and only received compensation if the account exceeded the high-water market since the last profitable period.

ERNEST VARITIMOS
144 Upland Rd, Sharon MA 02067
(508) 446-0517

RACHEL VARITIMOS
144 Upland Rd, Sharon MA 02067

UPLAND ASSET MANAGEMENT LLC

By: ERNEST VARITIMOS
Its: MANAGER
144 Upland Rd, Sharon MA 02067
(508) 446-0517

**CERTIFICATE OF SERVICE**

I CERTIFY that, on February 27, 2020, I filed this answer and served it on Plaintiffs' counsel by mail:

Michael Hill
Menzer & Hill, P.A.
7280 W. Palmetto Pk. Rd. Ste 301-N
Boca Raton, Florida 33433

ERNEST VARITIMOS

9

# PRIORITY MAIL EXPRESS®

PRESS FIRMLY TO SEAL

**FROM:** (PLEASE PRINT)

E. Vantino S
144 Upland Rd
Sharon, MA 02067

**TO:** (PLEASE PRINT)

Clerks office
US Federal Bldg and Courthouse
299 East Broward Blvd #108
Fort Lauderdale, FL 33301

ZIP+4: 33301-

**ORIGIN (POSTAL SERVICE USE ONLY)**

PO ZIP Code: 02067
Date Accepted (MM/DD/YY): 02/27/20
Time Accepted: 4:15 PM
Weight: 3 lb 10 oz
Scheduled Delivery Date: 02/28/20
Postage: $26.35
Total Postage & Fees: $26.35

U.S. POSTAGE PAID
PME 1-Day
SHARON, MA 02067
FEB 27, 20
AMOUNT
$26.35
R2305H126335-20

EJ 263 470 332 US




This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipme... may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; October 2018; All rights res...